UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VINCENT CREPY,<br><br>             Plaintiff,<br><br>    v.<br><br>RECKITT BENCKISER, LLC successor-in-interest to RECKITT BENCKISER, INC.,<br><br>             Defendant. | Civ. No. 12-2557 (WJM)<br><br>OPINION |

<u>WILLIAM J. MARTINI, U.S.D.J.</u>:

This matter comes before the Court on Defendant Reckitt Benckiser, LLC

("RBLLC's") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff Vincent Crepy opposes the motion.  For the reasons set forth below, the relief

sought by Defendant will be **DENIED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff is a French citizen and former executive of RBLLC.  (Compl. ¶ 14.)

Plaintiff has a United States green card, which allowed him to serve as an RBLLC

executive in RBLLC's Parsippany office beginning in June 2007 (the "Parsippany

Position").

The terms of Plaintiff's employment with RBLLC were governed by an

Employment Agreement which Plaintiff signed on May 10, 2007.  (*Id.* at ¶¶ 54-58.)

Under the terms of the Employment Agreement, in the usual course, RBLLC could not

---

[1] As this is a 12(b)(6) motion to dismiss, the following version of events assumes Plaintiff's allegations in the Complaint are true.

terminate Plaintiff without first providing six months' notice.  (Employment Agreement ¶ 2, Declar. of Terrence J. Farrell, Ex. A, ECF No. 15-1.)  However, RBLLC could immediately terminate Plaintiff, if, among other things, Plaintiff engaged in "gross misconduct" or "was guilty of any fraud, dishonesty, or such other conduct." (*Id.* at ¶ 14.1.)

On November 28, 2011, Amedeo Fasano, an RBLLC executive, informed Plaintiff that RBLLC intended to eliminate the Parsippany Position, but wanted Plaintiff to serve in a new executive position in Singapore (the "Singapore Position").  For purposes of clarity, the Court wishes to presently note that underlying the remainder of Plaintiff's factual allegations is his assertion that although RBLLC did not plan to continue employing Plaintiff once the Parsippany Position was eliminated, certain RBLLC executives disingenuously offered Plaintiff the Singapore Position because this allowed RBLLC to terminate Plaintiff from RBLLC at the lowest possible cost.  (Compl. ¶ 76.)

On November 30, 2011, Plaintiff informed Fasano that he would accept the Singapore Position but that he would need to maintain his United States green card.[2]  (*Id.* at ¶¶ 33, 34.)   And on December 8, 2011, Simon Nash, an RBLLC human resources executive, sent Plaintiff a Letter of Intent ("LOI") by which RBLLC formally offered – albeit disingenuously – the Singapore Position to Plaintiff.   (*Id.* at ¶ 38.)  The LOI begins:

"Dear Vincent,

---

[2] By retaining his green card, it appears that Plaintiff would be subject to higher tax liability.  However, Plaintiff's pleading fails to indicate how his insisted retention of his green card factored into negotiations on the level of compensation he would receive for accepting the Singapore Position.

> As you are aware, there are still a number of steps that need to be taken before the new organization structure at Reckitt Benckiser Group plc is confirmed and implemented.
>
> I am . . . delighted to confirm that we would want to offer you the [Singapore Position].  This offer is subject to final confirmation of the new organization by the Reckitt Benckiser Group CEO and Executive Committee as well as your acceptance and execution of a binding legal contract.  This contract will replace any agreement you may have in place with Reckitt Benckiser Group plc or any of its subsidiaries.  The key terms of the role are set out in this conditional Letter of Intent."

(LOI 1, Declar. of Terrence J. Farrell, Ex. B, ECF No. 15-1.)  The LOI assumes that the Singapore Position would begin on January 1, 2012, and sets forth Plaintiff's salary and other benefits in great detail.  (*Id*.)  The LOI also incorporates the termination provisions set forth in Section 14.1 of the Employment Agreement.  (*Id*. at 3.)  However, the LOI is silent as to whether Plaintiff was required to retain a United States green card, much less how Plaintiff's representation to RBLLC that he intended to retain his green card factored into the amount of compensation RBLLC offered to Plaintiff for accepting the Singapore Position.  (*Id*.)

On December 9, 2011 Plaintiff formally accepted RBLLC's offer by signing the LOI.  (Compl. ¶ 39.)  And in anticipation of moving to Singapore, Plaintiff, among other things, traveled with his family to Singapore to look for housing, obtained a work visa from Singapore authorities, and attempted to sell his New Jersey house.  (*Id*. at ¶ 53.)

However, after Plaintiff signed the LOI, he "revisited the issue of whether he needed to keep his green card" and informed RBLLC that he intended to surrender his green card on January 31, 2012.  (*Id*. at ¶ 42.)  Plaintiff asserts that he was entitled to do

this under Section 15.1 of the Employment Agreement, which states:  "The proper taxation of the Executive's remuneration under this Agreement shall be the Executive's responsibility."  (*Id*. at ¶ 46.)

Thereafter, at a meeting on February 6, 2012, Simon Nash and Amedeo Fasano disingenuously told Plaintiff that he was being immediately terminated from RBLLC because he was dishonest about his intention to retain his green card in order to receive additional compensation for the Singapore Position. [3]  (*Id*. at ¶ 43.)   Plaintiff indicates that to date, he has retained his United States green card.  (*Id*. at ¶ 48.)  As noted previously, Plaintiff now asserts that RBLLC never planned to continue employing Plaintiff once the Parsippany Position was eliminated, and that the Singapore Position was disingenuously offered to him because this allowed RBLLC to terminate Plaintiff from RBLLC at the lowest possible cost.  (Compl. ¶ 76.)

On April 30, 2012, Plaintiff commenced this action in district court, asserting claims against RBLLC for Fraud (Count One), Breach of Employment Contract (Count Two), Breach of Good Faith and Fair Dealing in Employment Agreement (Count Three), Breach of Letter of Intent (Count Four), Breach of Good Faith and Fair Dealing in Letter of Intent (Count Five), Fraud in the Inducement in the Execution of the Letter of Intent (Count Six), and Promissory Estoppel (Count Seven).  In response, Defendant has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint, in its entirety, for failure to state a claim.

---

[3] That sentiment is echoed in Plaintiff's February 7, 2012 termination letter which states that he was being terminated pursuant to Section 14.1 of his Employment Agreement for "misconduct" with regards to his "proposed transfer from the United States to our affiliate in Singapore."  (Compl. ¶ 44.)

## II. DISCUSSION

### A. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*citing Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d

5

Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993).

### B.  Analysis

### i. Plaintiff's Breach of Contract Claims (Counts Two and Four)

In Counts Two and Four, Plaintiff has alleged that RBLLC's actions breached the terms of the Employment Agreement and the LOI, respectively.  For those breach of contract claims to survive dismissal, Plaintiff must allege sufficient facts showing:  (1) that the LOI and the Employment Agreement are valid contracts; (2) that RBLLC breached those contracts; (3) that Plaintiff performed his obligations under those contracts, and; (4) that Plaintiff was damaged as a result of those breaches.  *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 566 (D.N.J. 2003).

As to the first element, RBLLC does not dispute that the Employment Agreement is a valid contract; RBLLC however, argues that Count Four should be dismissed because the LOI contains conditional language stating the offer of the Singapore Position was subject to final confirmation and execution of a binding contract, and thus, that the LOI is not an enforceable contract.  The Court notes that when a document contemplates a later "signing of a contract," the parties may or may not be bound by that preliminary agreement, and that this is a matter of the parties' intent.  *Morales v. Santiago*, 217 N.J. Super. 496, 501, 526 A.2d 266, 269 (App. Div. 1987).  *See also Channel Home Ctrs. v. Grossman*, 795 F.2d 291, 298–99 (3d Cir. 1986) ("the test for enforceability of an

agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced.").

In this case, when granting all favorable inferences to Plaintiff, the conditional language of the LOI is insufficient to show that parties did not agree to be bound by the other essential terms of that document which include Plaintiff's salary, start date, and the limited reasons RBLLC could immediately terminate Plaintiff from the Singapore Position. *See, e.g. Ilowite v. Diopsys, Inc.*, CIV.A. 04-2368, 2008 WL 305267 (D.N.J. Jan. 31, 2008) (although company's letter of intent stated that "[t]he conditions and term of employment will be determined by a fully executed employment contract," additional terms in letter which set forth a start date for employment, an annual salary figure, and additional benefits suggested that the parties intended to be bound by that letter).

In short, Plaintiff has sufficiently pled that the Employment Agreement and the LOI constitute binding contracts.  Pursuant to the express terms of those documents, Plaintiff could only be immediately terminated from RBLLC under certain conditions. Otherwise, RBLLC was required to provide Plaintiff six months' notice prior to termination.  When viewing the allegations in the Complaint in the light most favorable to Plaintiff, none of his actions provided a basis for RBLLC to immediately terminate him.  Thus, Plaintiff has sufficiently alleged claims for breaches of the LOI and the Employment Agreement.  Accordingly, RBLLC's motion to dismiss Counts Two and Four will be **DENIED**.

### ii. Breach of the Duty of Good Faith and Fair Dealing (Counts Three and Five)

In Counts Three and Five, Plaintiff alleges that with regards to the Employment Agreement and the LOI, RBLLC also breached the covenant of good faith and fair dealing. This covenant is implied in "[e]very contract in New Jersey" and imposes a duty on contracting parties to refrain from actions that would injure a contracting party's right to receive the fruits of that contract. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 421 (1997). Having determined that Plaintiff has stated a claim against RBLLC for breaches of the Employment Agreement and LOI, it follows that Plaintiff has also alleged sufficient facts showing that RBLLC breached the duty of good faith and fair dealing pursuant to those agreements. *See Coastal Group, Inc. v. Westholme Partners*, No. 94-3010, 1996 WL 33545605 at *7 (D.N.J. Oct. 3, 1996) ("because this court will deny defendants' motion to dismiss [plaintiff's count alleging breach of contract], it correspondingly must deny defendants' motion with respect to [plaintiff's count alleging violation of the breach of the implied covenant of good faith and fair dealing.") Accordingly, RBLLC's motion to dismiss Counts Three and Five will also be **DENIED**.

### iii. Fraud and Fraud in the Inducement (Count One and Six)

In Counts One and Six, Plaintiff asserts claims against RBLLC for fraud and fraud in the inducement, respectively. For purposes of clarity, it appears that Plaintiff has plead: first, that the LOI constitutes a binding contract, and that executives at RBLLC made false representations to induce Plaintiff to enter into that contract (fraud in the inducement); second, alternatively, that RBLLC executives made false representations to Plaintiff that he would continue working for RBLLC under the terms of the LOI after he

accepted the Singapore Position (fraud), even if the LOI ultimately is determined to not be a binding contract.[4]  (Pl.'s Opp. Br. 5, ECF No. 23.)

For Plaintiff to state its claims for fraud, he must plead sufficient facts showing that RBLLC made a material misrepresentation of fact; which it knew to be false; which was made to induce Plaintiff to rely on the misrepresentation; and, that Plaintiff was injured as a result of his reasonable reliance upon that misrepresentation. *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 624-25, 432 A.2d 521 (1981).  Moreover, Plaintiff's fraud claims are subject to the heightened pleading standard of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  *See also Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  In other words, Plaintiff must inject "precision and some measure of substantiation into [his] allegations of fraud" such as the "date, time, and place."  *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

When granting Plaintiff all favorable inferences, although RBLLC executive Amedeo Fasano offered Plaintiff the Singapore Position on November 28, 2011, and RBLLC Simon Nash continued negotiations which culminated in a formal offer via Nash's LOI on December 7, 2011, throughout the course of negotiations, Nash and Simon understood that RBLLC had no intention of actually employing Plaintiff in that

---

[4] The Court recognizes that in general, the economic loss doctrine bars tort recovery for economic losses stemming from a contractual relationship.  *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir.1995). And further, that ultimately, the Court must be mindful of "[t]he distinction between fraud in the inducement and fraud in the performance of a contract" in determining whether Plaintiff's fraud claims are barred by that doctrine. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F.Supp.2d 557, 563 (D.N.J. 2002).  However, presently, RBLLC disputes that the LOI is a binding contract.  (Def.'s Br. 28.)  And while the validity of the LOI remains in dispute, dismissal of Plaintiff's fraud claims based on the economic loss doctrine is not appropriate.  *See, e.g., Shapiro v. Barnea*, Civil No. 06-811 (JBS), 2006 WL 3780647, at *4 (D.N.J. Dec. 21, 2006).

position, as evidenced by their unjustified termination of Plaintiff from RBLLC on February 7, 2012.

In reliance on those misrepresentations, Plaintiff, among other things, traveled to Singapore with his family, obtained a Singapore work visa, and attempted to sell his New Jersey house after that position began on January 1, 2012.  In addition, had the Singapore Position never been offered to Plaintiff after he was told that the Parsippany Position was being eliminated on November 28, 2011, RBLLC would be required to pay Plaintiff for at least six more months.  However, by offering Plaintiff the Singapore Position, RBLLC ultimately paid Plaintiff less compensation than it otherwise would have had to under the terms of the Employment Contract.   On these facts, the Court finds that Plaintiff has sufficiently alleged its claims of fraud and fraud in the inducement.  *See, e.g. Ilowite*, 2008 WL 305267, at *9-10 (dismissal of fraud claim inappropriate where prospective employee alleged that president of company knowingly misrepresented to him that the company had obtained the requisite funding to hire him beginning in January 2003). Accordingly, RBLLC's motion to dismiss Counts One and Six will be **DENIED**.

### iv. Promissory Estoppel (Count Seven)

There are four elements to the doctrine of promissory estoppel: (1) a clear and definite promise, (2) made with the expectation that the promisee will rely upon it, (3) reasonable reliance upon the promise, (4) which results in definite and substantial detriment. *Lobindo v. O'Callaghan*, 357 N.J. Super. 488, 499 (App. Div. 2003).  For substantially the same reasons set forth in the Court's discussion of Plaintiff's fraud claims, Plaintiff has also alleged sufficient facts in support of it promissory estoppel

10

claim.  *See, e.g. Ilowite*, 2008 WL 305267, at *14 (denying dismissal of promissory estoppel claim on similar facts); *see also Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (noting that ample case law supports the proposition that a promise of employment will be sufficiently definite to constitute reliance under promissory estoppel theory where the promisee has acted to his detriment in taking up the employment).   Accordingly, RBLLC's motion to dismiss Count Seven will be **DENIED**.

## III. CONCLUSION

For the reasons stated above, Defendant's Rule 12(b)(6) motion is **DENIED**.


      /s/William J. Martini
      **WILLIAM J. MARTINI, U.S.D.J.**


**Date: January 7, 2013.**

11